# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JIM-PAULO RUBIO SERHAN (D1),

    Defendant.

_____/

Case No. 14-20685

HONORABLE DENISE PAGE HOOD

## ORDER DENYING MOTION TO SUPPRESS

**I.   BACKGROUND**

This matter is before the Court on Defendant Jim-Paulo Rubio Serhan's Motion to Suppress filed by his previous appointed counsel, Jonathan M. Epstein (retained counsel, Barton W. Morris, Jr., is currently representing Serhan). The Government filed a response brief opposing the motion.

On October 28, 2014, the Indictment was handed down charging Defendant Jim-Paulo Rubio Serhan with: Production of Child Pornography, 18 U.S.C. § 2251(c) (Count One); Production of Child Pornography, 18 U.S.C. § 2251(c) (Count Two); and, Transportation of Child Pornography, 18 U.S.C. § 2252A(a)(1) (Count Three); Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B) (Count Four), and a

Forfeiture Allegation, 18 U.S.C. § 2253. The Magistrate Judge ordered Serhan detained pending trial after a detention hearing was held. (Doc. No. 10; Doc. No. 17 (transcript)) The Court upheld the Magistrate Judge's order detaining Serhan pending trial. (Doc. No. 20)

Serhan, a 24-year old naturalized citizen from the Philippines, was interviewed by Canadian and United States authorities on August 28, 2014 at the Bluewater Bridge in Port Huron, Michigan and Sarnia, Ontario. Serhan, along with his employer, Michael McGill, a 62 year old business owner, attempted to cross into Canada to McGill's cottage for the holiday weekend. The Canadian Border Patrol ("CBP") selected them for further investigation. The CBP reviewed Serhan's telephone and discovered two videos of child pornography: a 9-second video of a pre-pubescent boy being held at his ankles and arms by other individuals, with his hands above his head, his pants and underwear pulled down, exposing his penis; and a 3 minute, 47 second video of a prepubescent boy masturbating, with someone in the room encouraging him to masturbate.

Serhan admitted to the CBP that he recorded both videos while he was recently in the Philippines. Serhan stated that the 9 second video was of a 14 year old boy and the other video was of his 8 year old cousin. Serhan told the CBP that the videos were "just for fun" and that there is a "cultural difference" between the United States and

the Philippines regarding such material. Serhan claimed that McGill is his boss, and that he knew McGill when he worked as a nursing home caregiver in Arizona and that one of his patients was McGill's father. Serhan stated that after McGill's father died, McGill took him in, gave him a place to live, a car to drive and a full time job. When he was interviewed later by the United States Homeland Security investigators, Serhan indicated he did not produce the videos, but that his friends made the videos. Serhan was released, pending further investigation.

A search warrant for McGill's house, where Serhan resides, was executed on September 24, 2014. Agents seized several electronics which are now being reviewed by the Government. Serhan was arrested on September 26, 2014 in West Virginia. At this interview, he admitted to producing the videos on his phone. Serhan indicated that he and McGill traveled together in the Philippines in October 2013, where Serhan stayed for eight months and McGill for two weeks. Serhan indicated in this interview that the three minute video was of a neighbor next to his mother's house in the Philippines. Serhan claimed that the boy came over to house and began masturbating. Serhan stated that he videotaped the incident because he wanted to show the child's grandfather and brother what he had done. The Government performed a forensic exam of Serhan's phone and found other images of a 3-year old toddler and an elderly male individual receiving a bath.

## II. ANALYSIS

Serhan seeks to suppress the information and images searched and seized by the United States and Canadien Border Agents on August 2014, and all fruits of that search and seizure. Serhan claims he did not consent to the search without a warrant of his phone at the border.

The Government responds that the Fourth Amendment does not attach to foreign searches conducted abroad, that Serhan consented to the search, that the border search exception applies and that law enforcement obtained a search warrant of the contents of Serhan's phone and laptop.

Generally, the Fourth Amendment of the United States Constitution requires officers to obtain a warrant prior to conducting a search. *United States v. Smith,* 510 F.3d 641, 647 (6th Cir. 2007). The Fourth Amendment does not extend to foreign government actions in foreign territories, even when directed against a United States citizen. *See United States v. Janis*, 428 U.S. 433, 455 n. 31, 456 (1976); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 261 (1990); *United States v. Rose*, 570 F.2d 1358, 1361 (9th Cir. 1978). Evidence resulting from a search or seizure by a foreign government on its own soil is admissible even when that search or seizure is triggered by information supplied by United States law enforcement authorities. *See United States v. Barona,* 56 F.3d 1087, 1096 (9th Cir. 1995). There are two exceptions to the

foreign government action rule: 1) if the foreign government's acts were so extreme that they "shock the (judicial) conscience", or, 2) if American law enforcement officials participated in the foreign search, or if the foreign authorities conducting the search were acting as agents for their American counterparts. *United States v. Yakoob*, 2009 WL 270161 *4 (E.D. Mich. 2009).

The Supreme Court has recognized a broad exception to the Fourth Amendment's requirement of probable cause or a warrant for searches conducted at the border because "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). Under this exception, searches of people and their property at the borders are per se reasonable, meaning that they typically do not require a warrant, probable cause, or even reasonable suspicion. *Id.* at 152-53.

Circuit courts have recognized the so-called "extended border search doctrine" and although the Sixth Circuit has yet to adopt the doctrine in a published opinion, the doctrine has been applied in an unpublished opinion. *See, United States v. Stewart*, 729 F.3d 517, 525 (6th Cir. 2013). "Distinct from border searches, extended border searches 'occur after the actual entry has been effected and intrude more on an individual's normal expectation of privacy. Therefore, extended border searches must be justified by 'reasonable suspicion' that the subject to the search was involved in

criminal activity, rather than simple mere suspicion or no suspicion.'" *Id.* (citing *United States v. Alfonso*, 759 F.2d 728, 734 (9th Cir. 1985)). The typical extended border search takes place at a location "away from the border where entry is not apparent, but where the dual requirements of reasonable certainty of a recent border crossing and reasonable suspicion of criminal activity are satisfied." *Id.* (citing *United States v. Guzman-Padilla*, 573 F.3d 865, 878-79 (9th Cir. 2009)). "The key feature of an extended border search is that an individual can be assumed to have cleared the border and thus regained an expectation of privacy in accompanying belongings." *Id.* (quoting *United States v. Cotterman*, 709 F.3d 952, 961 (9th Cir. 2013)). Where a subject has not cleared the border, the extended border search is not applicable. *Id.* at 525. In *Stewart*, although the defendant was cleared to leave after the initial search, his computers were not. *Id.* A routine border search of a laptop computer is not transformed into an "extended border search" simply because it is transported twenty miles beyond the border and examined within twenty-four hours of the initial seizure. *Id.* Property remains in the custody of the Customs and Border Protection until cleared for entry. *Id.*; 19 U.S.C. § 1499(a)(1), (a)(2)(B), (b)(1-3), and (c)(1). An "extended border search" case is typically applied in situations where customs agents returned custody of an item, or where customs agents never took custody of the item at the border, but conducted a subsequent search of that item after the custodian and

6

the items had cleared customs. *Id.* at 526.

In this case, as Serhan admits, the search process began with Canadian authorities when Serhan, with Mr. McGill, attempted to enter Canada. The Canadian authorities did not accept entry of the vehicle, Serhan or Mr. McGill. Serhan argues that this was not a typical border entry into the United States since he was never allowed into Canada. The Canadian officers indicate Serhan was cooperative with them in that Serhan gave the Canadian officers his password to his iPhone. Serhan claims that the border agents' search of his private data and communications required a search warrant.

Serhan claims that any evidence seized or learned from the Canadian officials must be suppressed. However, such evidence need not be excluded since Serhan does not claim either of the two exceptions apply: that the Canadian officials' actions were so extreme that they shock the judicial conscience or that the American officials participated in the Canadian officials' search at the Canadian border.

Serhan's argument that the border search constituted an "extended border search" is inapplicable since Serhan never left the border area and was not cleared to leave the border area when his iPhone was initially searched. There is no allegation that the Canadian officers' search of Serhan's iPhone was at the request of the United States officials. Any claim by Serhan that the Canadian officers' search of Serhan's

7

iPhone cannot be excluded because it is beyond the Fourth Amendment reach is without merit.

The United States Homeland Security Investigators also had reasonable suspicion of criminal activity, in light of the Canadian official's report that Serhan may be engaged in criminal activity–producing, transporting and possessing child pornography. Serhan's argument that he never left the "international border," meaning that he never left the United States, is without merit since he had presented himself to the Canadian officials at the Canadian border. Serhan then had to be returned to the United States' border and had to present himself to the United States officials for entry back into the United States. Any search the United States' officials performed before allowing Serhan to enter the United States is subject to the border search exception. The preliminary searches at the border do not require a search warrant. Serhan signed a Miranda waiver and a subsequent forensic search by the agents occurred only after search warrants were obtained. (Resp. Exs. B, C, and D)

Because the initial search of Serhan's iPhone was performed at the border, no search warrant was required. Search warrants were later obtained to search the electronic devices retained by Agents. Serhan's Motion to Suppress is denied.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Jim-Paulo Rubio Serhan's Motion to Suppress **(Doc. No. 21)** is DENIED.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: June 5, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 5, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager