## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                            Case No. 14-cr-20685

v.                            HON. DENISE PAGE HOOD

JIM-PAULO RUBIO SERHAN,

     Defendant.

_____/

## ORDER DENYING DEFENDANT'S
## MOTION FOR COMPASSIONATE RELEASE
## [ECF No. 83]

**I.    Introduction**

On September 11, 2020, Defendant filed a *pro se* Motion for Compassionate Release (the "Motion") [ECF No. 83] and a Motion for Appointment of Counsel. After the Court granted the Motion for Appointment of Counsel, the Government filed a response brief. On November 18, 2020, Defendant's appointed counsel filed a supplemental brief in support of the Motion, to which the Government filed a supplemental response brief, and appointed counsel filed a reply to the same. For the reasons set forth below, the Motion is denied.

## II.    Background

On October 28, 2014, Defendant was charged in a four-count Indictment with two counts of production of child pornography, one count of transporting child pornography, and one count of possession of child pornography.  On October 27, 2015, Defendant pleaded guilty to one count of producing child pornography. On February 16, 2017, the Court sentenced Defendant to 180 months in prison, of which he has served approximately 74 months.  His projected release date is July 6, 2027.

At the time the Government filed its initial response brief, there were zero positive cases of Covid-19 at FCI Milan.  Defendant's counsel's supplemental brief filed on November 18, 2020 claimed that there was one inmate and three staff members who had contracted Covid-19.  At the time the Government filed its supplemental response on December 2, 2020, there was one active positive case of Covid-19 at FCI Milan.  The Court's review of the Bureau of Prison's ("BOP") website on December 14, 2020 revealed that there were 87 inmates and 17 staff members with active positive tests.  As of March 10, 2021, there are 0 inmates and 2 staff members with active positive tests.

Defendant is 30 years old.  He claims to have asthma, although no record of any diagnosis for that condition has been produced.  Defendant's BOP records do not reflect that he had complained of asthma prior to July 31, 2020. In Defendant's

presentence investigation report prepared by the U.S. Probation Department (the "PSR"), Defendant reported "good health" and did not complain of shortness of breath or chest pain.  His medical records from the BOP reflect that the first time he ever requested an inhaler was July 31, 2020. In that request, he claimed to have had asthma since he was eleven, but Defendant's medical records from the BOP do not reflect any prior indication of that diagnosis.  Defendant has produced no other (non-BOP) medical records to support that claim.  The July 31, 2020 BOP medical records for Defendant indicate a "respiratory disorder."

Defendant never communicated to the Probation Department, and the PSR does not reflect, that he suffers from "latent tuberculosis."  Defendant's BOP records reflect that he has asserted having latent tuberculosis since being incarcerated, but Defendant has refused treatment for his latent tuberculosis [ECF No. 89, PageID 885 (Ex. B at 106)].  Defendant has received lung x-rays regularly while in the custody of the BOP, and the x-rays have shown normal, clear lungs every time.  Defendant states that he has a BMI of 27 (which is "overweight," as 24.9 is the top of "normal" and 30 is the beginning of "obese"), although his BMI was only 25.2 in 2019. Defendant states that he has a history of smoking, and he claims to be pre-diabetic (but has not produced any evidence of that).

On or about July 15, 2020, Defendant filed a request for compassionate release

with his warden. The request was denied on or about August 27, 2020, and it is undisputed that Defendant exhausted the BOP's administrative procedures before filing the Motion.

## III.   Analysis

Defendant asserts that he is entitled to compassionate release from this Court pursuant to 18 U.S.C. § 3582(c)(1)(A).  Defendant contends that the totality of his health conditions, in particular his respiratory conditions, support his immediate release.  He claims that his susceptibility to Covid-19 at FCI Milan constitutes an extraordinary and compelling reason warranting his early release to his mother's home in New Jersey.

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A).  A court also must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id*.   Although this Court and many others previously believed that U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) constituted the "applicable policy statement[]" with which courts must comply under 18 U.S.C. § 3582(c)(1)(A), the Sixth Circuit recently established that Section 1B1.13 is not applicable, nor is it to be considered by the Court, when determining

4

whether there are extraordinary and compelling reasons warranting a reduction in sentence. *See, e.g., United States v. Hampton*, No. 20-3649 (6th Cir. Jan. 19, 2021); *see also United States v. Elias*, No. 20-3654 (6th Cir. Jan. 6, 2021); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020).

"Extraordinary" is defined as "exceptional to a very marked extent." Webster's Third International Dictionary, Unabridged (2020). "Compelling" is defined as "tending to convince or convert by or as if by forcefulness of evidence." *Id.* A court in the Eastern District of Michigan has described the requirements of "'extraordinary' as beyond what is usual, customary, regular, or common," and "'compelling reason' as one so great that irreprovable harm or injustice would result if the relief is not granted." *See United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020) (citations removed). And, as the Tenth Circuit recently explained, a district court "lack[s] jurisdiction" to grant compassionate release when a defendant's circumstances do not fall within those categories. *United States v. Saldana*, 807 F. App'x 816, 820-21 (10th Cir. 2020).

### A.     No Extraordinary and Compelling Reason

The Court finds that Defendant has not established an extraordinary and compelling reason for compassionate release.  Defendant is 30 years old, an age that does not place him in any category warranting a compassionate release.  He does not

assert any family circumstances in his request, nor any other non-medical basis for release.

Defendant cites his medical conditions, in conjunction with the Covid-19 pandemic, as the basis for compassionate release. Courts have recognized that the existence of the Covid-19 pandemic alone is insufficient to support the grant of a motion for compassionate release. *See, e.g., United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Court is not persuaded that Defendant's overall health condition constitutes an extraordinary and compelling reason. The Court makes that finding even in light of the Covid-19 pandemic and the fact that FCI Milan currently appears to be experiencing an outbreak of the coronavirus among inmates and staff, a situation that Defendant states has resulted in total lock-down and the prohibition on even attorney conferences by phone or Zoom for at least a two week period. The Court notes the recent cases cited by Defendant where compassionate release motions were granted in this district, but the Court finds those defendants' underlying health conditions were much more significant. *See* ECF No. 92, PageID 1048-49 (discussing *United States v. Thomas Fields*, No. 12-20274 (Order dated December 8, 2020) (50 years old, "overweight" with a BMI under 30, with hypertension and type two diabetes); *United States v. Dvone Brady*, No.18-20106, (Order dated December 2, 2020) (36.1 BMI (morbid obesity) and his smoking history)).

When Defendant's PSR was prepared, he had the opportunity to respond to the Probation's Department's efforts to gather relevant information about him, including medical issues, pursuant to a lengthy questionnaire provided to Defendant.  Defendant reported he was in "good health."  He did not report having asthma or latent tuberculosis, though he now asserts that both conditions predate his arrest.

Defendant has not submitted any private medical records that document his claim that he has had asthma since he was 11 years old.  Defendant's BOP medical records, like the PSR, do not include any notation(s) of any claimed asthmatic condition prior to July 31, 2020.  By July 31, 2020, the Covid-19 pandemic had been ravaging the country (and affecting inmates at federal prisons) for more than four months and had become a recognized basis for prisoners to obtain relief pursuant to compassionate release motions.

The Court notes that Defendant has been incarcerated since 2014 in conjunction with the underlying offense.  Although Defendant allegedly has had asthma since he was 11 years old, Defendant was not taking any medication for, did not have an inhaler to assist with, nor did he ever report, any difficulty breathing, chest pain, or related problem prior to July 31, 2020.  Assuming Defendant has asthma, there is no medical documentation or other reason to believe that his asthma is moderate or severe.  And, even if his asthma is moderate to severe asthma, based on current CDC

guidelines, he "might be at an increased risk" for severe illness, he is not "at an increased risk" category. *See* https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-conditions.html. As the CDC does not recognize asthma, in itself, as a severe risk factor, the Court is not persuaded that it should either.

Defendant, of course, asserts that he does not have only asthma. He states, and his BOP medical records reflect, that he has latent tuberculosis. Those BOP medical records also reflect that: (1) the multiple lung x-rays conducted while he has been incarcerated have come back normal; and (2) Defendant has refused treatment for the condition. Defendant has not offered any evidence that latent tuberculosis creates a severe risk of illness in the event of becoming infected with Covid-19.

Defendant also is currently overweight, but he is not nearly obese, nor is there any indication that his weight is impacting his current health condition. Defendant has offered no medical support for his claim of being pre-diabetic. In the Motion Defendant cited an undefined history of smoking, without any indication of how frequent or the manner of his smoking, but in his reply, he states that he began smoking at 14 and continued to do so as an adult, smoking 1½ to 2 packs a day.[1] The

---

[1]In the reply brief, Defendant's counsel:

[N]otes a Cedars-Sinai.org report which states: "Smokers often have serious heart and lung health problems already. Add COVID-19 to the mix and you are likely

Court does not find that these factors significantly buttress his argument for an extraordinary and compelling reason for compassionate release.

For the foregoing reasons, even taking the totality of Defendant's health into consideration, the Court is not persuaded that he has demonstrated an extraordinary and compelling reason for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

### B. Danger to Community: 18 U.S.C. § 3553(a)

Even if the Court could conclude that Defendant had shown an "extraordinary and compelling reason" for release due to his health condition(s), a weighing of the § 3553(a) factors—which the Court must consider under § 3582(c)(1)(A)—does not support the release of Defendant. For the reasons set forth below, the Court finds that Defendant remains a threat to community safety, especially for children, and a reduction of Defendant's sentence under § 3582(c)(1)(A) is not warranted.

Defendant confessed to, and was convicted of, producing child pornography. Defendant's conduct included forcing one little boy to masturbate on camera, and forcibly pulling off the pants and underwear of another little boy. Although courts

---

to get a very sick patient; they just don't have the physiological reserves to deal with the massive inflammatory attack brought on by the coronavirus," said Joseph E. Ebinger, MD, cardiologist at Cedars-Sinai.

*See* ECF No. 92, PageID 1049

have granted compassionate release to persons convicted of child pornography, courts have typically refused to release inmates with a significant portion of their sentence remaining. Compare *Hull*, 2020 WL 2475639, at *3 (refusing to release an inmate who had "only served a little over half of his 60-month sentence" for receipt of child pornography), and *United States v. Riter*, 2020 WL 3428144, at *4 (S.D.N.Y. June 23, 2020) (refusing to release an inmate at FCI-Elkton who had served roughly one third of his sentence for receipt, distribution, and possession of child pornography), with *United States v. Pippin*, 2020 WL 2602140, at *3 (W.D. Wash. May 20, 2020) (releasing inmate who had served 70 percent of his sentence for possession of child pornography) and *United States v. Feucht*, 2020 WL 2781600, at *4 (S.D. Fla. May 28, 2020) (releasing inmate who had served about 86 percent of his sentence for distribution of child pornography).

Courts also consider whether an inmate "has participated in rehabilitative programming specific to his offense of conviction." *Coleman*, 2020 WL 3039123, at *5. Defendant has served approximately 74 months of his 180 month sentence (about 41%). Even if he is released on his current projected release date of July 6, 2027, he still has served less than 50% of his sentence (74 months served, at least 78 months remaining). This fact weighs heavily against Defendant release, especially in light of Defendant's failure to be fully accountable or make efforts to reform himself.

10

Defendant promised the Court at sentencing that he would "use the time I'm incarcerated to get counseling, to improve myself so nothing like this will -- will ever happen again." [ECF No. 87, Ex. C at 40].  Defendant has not participated in any sex offender treatment during his time within the BOP, even when he was offered such treatment.  Defendant instead "denied interest or need." [ECF No. 87, Ex. B at 93, 95].

The Court also finds that Defendant's failure to follow through on his representation to the Court shows that Defendant is not serious about the nature of his criminal activity or about taking steps to avoid engaging in similar conduct in the future.  Defendant's actions instead reveal that his sentence probably has not served to deter him from his behavior and that he continues to be a danger to the community, especially to children.

Finally, the nature and circumstances of the underlying offenses do not support an early release.  With respect to the offense for which he was charged and pleaded guilty, Defendant produced child pornography of two little boys in the Philippines who came from poor families and looked at Defendant as a rich American. He manipulated them and forced them into sexual conduct for his pleasure. At sentencing, however, Defendant made arguments that the boys were not really victims but could have made everything up to get a free trip to the United States.  As Defendant has

11

expressed an intention to return to the Phillipines upon his release, the Court cannot help but think that the decision is based on Defendant's belief that the Phillipines is "a foreign land where cultural norms and laws are more lax" ECF No. 90, PgID 1038. Even if true, such thinking does not persuade the Court that releasing Defendant into the community at this time is warranted (especially as Defendant is not eligible to travel to the Phillipines at this time – *see* https://ph.usembassy.gov/covid-19-information/).

For those reasons, the Court concludes that Defendant is not entitled to compassionate release based on a consideration of the factors set forth in 18 U.S.C. § 3553(a). *See Knight*, 2020 WL 3055987, at *3 ("The § 3553(a) factors . . . weigh against his request for compassionate release."); *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at **3–5 (E.D. Mich. May 15, 2020) ("Defendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors).

For the reasons set forth above, the Court has determined that it cannot discount

the risk of danger to the community posed by Defendant, even during the Covid-19 pandemic.  The Motion is denied.

## IV.   Conclusion

Accordingly,

IT IS ORDERED that Defendant's Motion for Compassionate Release [ECF No. 83] is DENIED.

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated: March 12, 2021

13